JOHN OXFORD ET AL., Respondents, v. THOMAS Mc-
NALLY, Appellant.

**Kansas City Court of Appeals, March 24, 1886.**

CASE ADJUDGED.—The court, after reviewing the facts, as set forth in the opinion, refuses, under the facts of this case, to interfere with the discretion and conclusion of the jury, the instructions, as a whole, fairly enough presenting the real issues in the case.

APPEAL from Carroll Circuit Court, HON. JAMES M. DAVIS, Judge.

*Affirmed.*

Statement of case by the court.

This is action to recover the balance claimed on a contract between plaintiffs and defendant for furnishing railroad ties. The petition alleges, in substance, that between January 1, and June 1, 1882, the plaintiffs sold and delivered to defendant, at Jackson station, on the Wabash, St. Louis & Pacific Railway, in Daviess county, 10,655 railroad. ties, for which defendant agreed to pay thirty-five cents a tie, amounting in the aggregate to the sum of $3,729.25. That defendant paid .

thereon the sum of $2,379.25, leaving a balance due plaintiffs of $1,379.25.

The answer, after tendering a partial denial, pleaded that the contract was made in December, 1881, and the ties were to be delivered at Jackson station on or before the first of September, 1882, and called for first-class ties to be eight feet long, free of kerf, six inches thick, and eight inches face at the narrowest end; second class ties to be eight feet long, free from kerf, six inches face at the narrowest end, and six inches thick; that in the event plaintiffs furnished five thousand ties, defendant was to pay thirty-three cents a tie; and in case of furnishing five thousand, and less than ten thousand ties, defendant was to pay thirty-four cents per tie; and if over ten thousand ties were furnished, defendant was to pay thirty-five cents per tie. All the ties were to be sound, and subject to inspection. That, pursuant to the contract, the plaintiffs furnished and delivered 5,953 ties, for which they were entitled to receive thirty-four cents per tie. That defendant had paid plaintiffs on said contract $2,352.50. The answer then claims that defendant had overpaid plaintiff the sum of $328.48, for which he asks judgment.

The reply tendered the general issue as to the new matter.

The plaintiffs' evidence tended to show that they did not accede to the terms of the contract proposed in 1881, as to the character, in some respects, of the ties to be furnished; but it was understood that the ties to be so furnished were for use on the Wabash railroad; that before any of the ties were delivered, some time in February, 1882, and again later in the spring, the defendant came to plaintiff, Oxford, and informed him that the Wabash railroad would not want any ties, but that he would take ties for another road, which did not require such high quality of ties, and that plaintiff, Oxford, exhibited a sample of the ties he was making, and defendant said they would do, and told plaintiff to

continue to get out and deliver the quantity named, etc. ; that accordingly plaintiffs proceeded to furnish ties thereafter under this new arrangement, after delivering the 5,953 already made under the first contract.

The defendant's evidence tended to support the issues on his part.

On behalf of the plaintiffs the court gave the following instruction :

"If the jury believe from the evidence that the original contract was abandoned, and in lieu thereof, it was agreed that the plaintiffs should deliver and the defendant receive such ties as should equal in size and quality those pointed out and agreed upon, and that, in pursuance of such last contract, the plaintiffs delivered at the station ten thousand, six hundred and fifty-six ties, including those already deposited there, then the plaintiffs must recover for them at the rate of thirty-five cents each, excepting for such as failed to be of equal size and quality with those twenty pointed out and agreed upon, together with interest at the rate of six per cent., from September, 1882."

For the defendant the court gave the following instructions :

"1.  If the jury find, from the evidence, that the plaintiffs were to furnish to the defendant, ties of the following description, to-wit : 'First-class ties to be eight feet long, seven inches wide and six inches thick; second class ties, eight feet long, six inches thick and six inches face,' and that the defendant received all of said ties that were of said dimensions and specifications, and paid for the same, they will find for the defendant."

"2.  If the jury find from the evidence, that the defendant advanced to plaintiffs moneys in excess of the ties received by the defendant, as defined in instruction number one, they will find for him for excess of said advancement over and above the number for which they were entitled to compensation."

"3.   If the jury find, from the evidence, that by the original contract between the parties, the plaintiffs were to furnish ties of a particular size and character, then it devolved upon the plaintiffs, if they claim that the contract was changed in any particular, to show to the satisfaction of the jury what said alleged change was, and that they complied with said contract as so modified, or changed, as to the character of the ties to be delivered ; and if plaintiffs failed to comply with said contract, as to the size and character of ties to be delivered, then they will find for defendant."

"6.   It is admitted in this case that defendant has paid on said contract the sum of two thousand, three hundred and fifty-two and fifty-one hundredths dollars, and if the ties which defendant should have received under said contract amount to less, under the contract price, than that sum, the defendant is entitled to recover from plaintiffs in this action said difference, and the jury will so find."

The court refused to give the following declarations, asked by defendant :

"4.   If ties which the defendant refused to receive, and which were rejected by the inspector, were not ot the size or character required by said contract, then defendant was not bound to receive or pay for the same, and he had the right to receive such as complied with the contract and to refuse to receive or pay for such as did not come within the terms of the contract."

"5.   If the jury find, from the evidence, that plaintiffs were to deliver ties of a certain size and character, and if they further find that any considerable portion of the ties which plaintiffs delivered at Jackson station were not of the size and character required by the contract, then defendant was not bound to receive or pay for the same, and the verdict must be for the defendant."

The jury returned a verdict for plaintiffs in the sum of $516.95.

Defendant prosecutes this appeal.

WAIT & BROADDUS, for the appellant.

I.   The court erred in *giving* plaintiffs' instructions against the objections of defendant. They are not supported by any evidence in the case, and are *against* all the evidence.

II.   The court erred in *refusing* instructions four and five, asked by defendant. They only provide that plaintiff, be required to perform their contract before they could recover.

RUSH & ALEXANDER, HICKLIN & YATES, for the respondents.

I.   The jury passed upon the testimony and found the issues in favor of plaintiffs.

II.   The instruction given for plaintiffs properly presented the law. Those refused to defendant could not have been fairly given. One of them mis-states the law as to the burden of proof. Another is misleading and indefinite, not distinguishing between two alleged contracts—leaving it to the conjectures of the jury. The substance of them had already been given, and those refused go too far.

PHILIPS, P. J.— I.   The only errors assigned for the reversal of this judgment arise on the instructions. It is claimed that the instruction given on behalf of plaintiffs is wholly unsupported by the evidence. This assumption rests on the fact that the plaintiff, Oxford, in his testimony, said that neither he nor his co-plaintiffs ever delivered the ties, and that they were not delivered to defendant by their consent. Of course, if the ties were not delivered the plaintiffs could not recover under this petition. The place of delivery, it is agreed, was Jackson station. It is manifest from the whole record that Oxford in his statement was giving rather a legal conclusion of his mind and understanding, and was

referring to the ties delivered after the 5,953 ties. The answer itself admitted the delivery of said 5,953 ties, and that they complied with the contract. That a large number of other ties were delivered at Jackson station there can be no just ground to question. It appears that some time after the ties were ready, the defendant sent one Boyd to inspect them. The plaintiffs claimed that the ties delivered under the arrangement of February, 1882, were not subject to inspection, but were only required to come up to the sample shown when the defendant was in the woods and agreed that this would do. So Oxford testified: "I refused to allow Boyd to inspect the ties. I claimed that he should take all the ties *we had at Jackson station*. There was nothing said about inspection when defendant was in the woods and agreed to take smaller ties than those originally required." The witness, Sneed, on behalf of plaintiffs testified: "I saw the ties in question at Jackson station. I examined about six thousand of them. They were a light grade of ties." (Then these must have been in excess of the high grade of ties.) "After the inspector called Parberry's attention to the character of the ties on hand, plaintiffs continued to bring in a great many small ties." The defendant testified that he got the 5,953 good ties, complying with the original contract, and then stated: "I suppose the remainder of the ties *are at Jackson station*. They would not pass inspection and I would not take them." Jones testified for defendant: "I know the ties in controversy—saw them after they were brought to the railroad station. They were small ties. There were 3,900 thrown out as culls; 5,953 ties were taken by defendant, and 3,900 rejected, which were all the ties at Jackson station at the time."

From which it is clear the ties were at the station; and what was in the mind of the plaintiff, Oxford, when he said they had not been delivered, was that defendant had no right to subject them to inspection and take them by culling them as he did; that he had not deliv-

ered for such purpose. The whole controversy at the trial was as to the making of the second contract, and the quality of the ties. There was no question made as to whether plaintiffs had delivered them at the station.

The verdict of the jury shows that they sought after justice between the parties, and made a compromise, giving the plaintiffs less than they asked and making the defendant do more than he was willing. With their discretion, under the facts of this case, we will not interfere. Under the evidence of the witness, Jones, to say nothing of the probable loss and taking away of ties after the plaintiffs had delivered them, long before Jones saw them, there were 9,853 ties at Jackson station. At thirty-four cents a tie the defendant owed $3,349.02. He had paid $2352.51, leaving a balance of $996.51, provided the ties above the 5,953 came up to the standard of the sample shown defendant at the time the contract was changed. The jury allowed the plaintiff only $516.95. The jury again were probably influenced by a desire to attain an equitable adjustment, and we see no reason to interfere with their discretion and conclusion.

II. The fourth instruction asked by the defendant and refused by the court was properly rejected. It spoke of the character of the ties "required by the contract," without indicating which contract. It ignored the contention, made by the plaintiffs, that the first contract had been changed, and that the ties in controversy had been furnished under the latter contract. It was, therefore, misleading.

The fifth instruction so refused was obnoxious to the same objection. The instructions, taken as a whole, fairly enough presented the real issues in the case. The defendant was beaten on the facts, in the opinion of the jury ; and we can discover no just reason for disturbing their finding.

The other judges concurring, the judgment of the circuit court is affirmed.